[14 NE3d 377, 991 NYS2d 24]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMEL WALSTON, Appellant.

Argued May 7, 2014; decided June 12, 2014

**APPEARANCES OF COUNSEL**

*Lynn W.L. Fahey, Appellate Advocates*, New York City (*Kendra L. Hutchinson* of counsel), for appellant.

*Kenneth P. Thompson, District Attorney*, Brooklyn (*Rhea A. Grob* and *Leonard Joblove* of counsel), for respondent.

### OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be modified by vacating defendant's conviction of manslaughter in the first degree, with leave to the People to resubmit that charge to a grand jury, and remitting to Supreme Court for resentencing on defendant's conviction of criminal possession of a weapon in the second degree and, as so modified, affirmed.

Defendant was indicted on one count each of murder in the second degree (Penal Law § 125.25 [1] [intentional murder]) and criminal possession of a weapon in the second degree (Penal Law § 265.03 [3] [possession of a loaded firearm]), after he shot the victim five times, killing him. At the conclusion of proof at trial, the court granted defense counsel's request to charge the jury on the lesser included offense of manslaughter in the first degree (Penal Law § 125.20 [1] [intent to cause serious physical injury to another person, and causing the death of such person]). The court instructed the jury on counts of second-degree murder, first-degree manslaughter and second-degree weapon possession, and, as relevant here, gave an expanded intent charge that applied with equal force to the murder and manslaughter counts.

During deliberations, the jury sent a note that read: "Power Point - Judge[']s directions on Manslaughter/Murder in the Second Degree - (Intent)." The court apprised counsel that the jury "want[ed] the Judge's directions on manslaughter and murder in the second degree," but did not mention the note's "intent" language. After the jury entered the courtroom, the court again paraphrased the note by stating "you have asked for a read back of manslaughter and murder" and gave the standard charges for each crime. The jury acquitted defendant of murder but found him guilty on the manslaughter and weapon possession counts.

On appeal, defendant claimed that the trial court's handling of the jury note violated the procedure delineated in *People v O'Rama* (78 NY2d 270 [1991]). The Appellate Division concluded that defendant's *O'Rama* argument was unpreserved and that the claimed error did not constitute a mode of proceedings error (101 AD3d 1156, 1157-1158 [2d Dept 2012]).

CPL 310.30 requires that when the trial court receives a request "for further instruction or information with respect to

the law," the court must give notice to the People and the defense. We explained in *O'Rama* that such notice must be "meaningful," i.e., that the parties receive "notice of the *actual specific content* of the jurors' request," because "counsel cannot participate effectively or adequately protect the defendant's rights if this specific information is not given," nor is counsel able "to evaluate the inquiry and the proper responses in light of the defendant's interests" absent such notice (*O'Rama*, 78 NY2d at 277 [citations omitted; emphasis supplied]). "Meaningful notice" to counsel of the note's content, and a "meaningful response" to the jury's request, comprise the trial court's core responsibilities (*People v Kisoon*, 8 NY3d 129, 134 [2007]). To assist the trial court in meeting those responsibilities, we outlined a suggested procedure for the court's handling of jury notes when it receives a substantive written jury communication: the court should mark the note as a court exhibit and read it into the record before the jury is called in (thereby ensuring adequate appellate review); afford counsel an opportunity to suggest responses to the note; inform counsel of the substance of the court's proposed response (thereby giving counsel an opportunity to suggest appropriate modifications before the jury is returned to the courtroom); and read the note aloud in open court before the jury so that any inaccuracies may be corrected by the individual jurors (*see O'Rama*, 78 NY2d at 277-278).

The Appellate Division erred in concluding that defendant was required to preserve his *O'Rama* argument. We have acknowledged that some departures from *O'Rama* procedures are subject to our rules of preservation, such as where the court reads the "entire content" of the note verbatim in open court prior to responding to the jury (*see People v Alcide*, 21 NY3d 687, 693-694 [2013]; *People v Starling*, 85 NY2d 509, 516 [1995] [court read the *entire content* of the notes in open court]; *People v DeRosario*, 81 NY2d 801, 803 [1993] [requiring application of traditional preservation rules where defense counsel was present, was given notice of the contents of the written inquiry and participated in formulating responses thereto]). In such cases, although there has been a deviation from procedure, preservation is required where it is evident from the record that the trial court fulfilled its core responsibilities. When a court fails to fulfill those responsibilities, however, a mode of proceedings error occurs and departures from the *O'Rama* procedures are not subject to preservation rules (*Kisoon*, 8 NY3d at 135; *O'Rama*, 78 NY2d at 279).

Here, the trial court failed to meet its core responsibilities with regard to the note. Although there is record evidence that defense counsel was made aware of the existence of the note, there is no indication that the entire contents of the note were shared with counsel. Rather, the record reflects that the court paraphrased the note for counsel and the jury, but in each instance it omitted any reference to the note's "intent" language, hardly "a fair substitute for defense counsel's own perusal of the communication" (*O'Rama*, 78 NY2d at 277). Although the note is ambiguous concerning whether the jury was requesting an expanded definition of the intent element or was merely asking for a read back of the homicide charges which included a definition of intent, this only substantiates defendant's argument that the court failed to meet its core responsibilities of providing defense counsel with meaningful notice and an opportunity to provide input so that the court could give the jury a meaningful response. Where the record fails to show that defense counsel was apprised of the specific, substantive contents of the note—as it is in this case—preservation is not required* (*see People v Tabb*, 13 NY3d 852, 852 [2009]). Where a trial transcript does not show compliance with *O'Rama*'s procedure as required by law, we cannot assume that the omission was remedied at an off-the-record conference that the transcript does not refer to (*id.*).

■ That does not mean, however, that defendant is entitled to vacatur of his conviction on the weapon possession count. In his written statement, which was read to the jury and admitted in evidence, defendant confessed to possessing a loaded firearm and shooting the victim. The People also presented evidence from a witness who testified that he had given defendant the revolver that defendant used moments before the shooting. Because the note at issue was addressed to an element relative to the homicide counts, and not to the weapon possession count, there was no danger of prejudice as it related to the latter count.

SMITH, J. (concurring). I join the Court's memorandum opinion, which follows our case law in holding that an *O'Rama* error is a mode of proceedings error when a trial judge fails to disclose to counsel the full contents of a jury note. I add this concurring opinion to suggest that we should be willing to

---

* Defendant claims that he was deprived of the effective assistance of counsel because his attorney should have requested that the court charge the lesser included offense of manslaughter in the second degree. In light of our holding, we do not reach that issue.

consider in the future an argument, not made here, that the cases so holding, including *People v O'Rama* (78 NY2d 270, 279 [1991]) itself to the extent that it finds a mode of proceedings error, should be overruled. This idea finds support in some of our more recent jury note cases, which have taken a flexible approach to the mode of proceedings doctrine, and which may be read as eroding *O'Rama*'s force as precedent (*People v Williams*, 21 NY3d 932 [2013]; *People v Ramirez*, 15 NY3d 824 [2010]).

The term "mode of proceedings error"—more precisely an error that affects "the organization of the court or the mode of proceedings pr[e]scribed by law" (*People v Patterson*, 39 NY2d 288, 295 [1976])—is used to identify a "very narrow exception" to the rule that errors made by a trial court may not be raised on appeal unless they are preserved at trial by timely objection (*id.*). A mode of proceedings error is found where a procedure is at such "basic variance with the mandate of law" that "the entire trial is irreparably tainted" (*id.* at 296). As we said in *People v Becoats* (17 NY3d 643, 651 [2011]): "Not every procedural misstep in a criminal case is a mode of proceedings error. That term is reserved for the most fundamental flaws."

We held in *O'Rama* that a court's failure to disclose the full text of a jury note to counsel fits within this "very narrow" category of "fundamental" error. Our reasoning on the subject consists of the following sentence:

> "As a threshold matter, we note that the court's error in failing to disclose the contents of the note had the effect of entirely preventing defense counsel from participating meaningfully in this critical stage of the trial and thus represented a significant departure from the organization of the court or the mode of proceedings prescribed by law" (*O'Rama*, 78 NY2d at 279 [internal quotation marks and citations omitted]).

This cursory rationale does not seem very persuasive. It is not clear to me why *O'Rama* error is comparable to other errors we have identified as mode of proceedings error—e.g., trial by a jury of less than 12 (*Cancemi v People*, 18 NY 128, 135-139 [1858]), prosecution for an infamous crime in the absence of indictment by a grand jury (*People ex rel. Battista v Christian*, 249 NY 314, 318-321 [1928]), shifting the burden of proof to the defendant (*Patterson*, 39 NY2d at 296), and abdicating the judicial function to a law secretary (*People v Ahmed*, 66 NY2d 307, 310-311 [1985]).

Of course, even if *O'Rama* was wrongly decided, that alone would not be sufficient reason to overrule it. The claims of stare decisis are stronger than that. But decisions that wrongly allow defendants to complain on appeal of minor errors to which they raised no objection are more harmful than many other mistaken decisions. I am not a stickler for the rigid application of the preservation rule; but it is one thing to be relatively flexible in the application of the rule, and another to abandon it altogether in a class of cases. To do so leads—as this case illustrates—to reversals based on errors that could easily have been cured if counsel had complained. Here, if counsel had simply said "May I see the note, Your Honor?," the judge probably would have handed it to him, and the problem we now face would not exist.

Dispensing with the preservation requirement may also invite defense counsel to manipulate the system by remaining silent while error is committed, only to complain of it later (*see Becoats*, 17 NY3d at 651). *O'Rama*-type cases are a good illustration of this problem. When a trial judge makes the mistake of paraphrasing or summarizing a jury note, only a foolish defense lawyer will ask the judge to correct the error. The likelihood that knowing the verbatim contents of the note will enable counsel to get an acquittal or a hung jury is extremely small. But if the error remains uncorrected the lawyer has a near guarantee that any conviction will be reversed.

In general, we do not like overruling cases because the bar relies on the stability of our precedents. It is not clear to me, however, that anyone can legitimately rely on the rule that *O'Rama* error may be raised on appeal even when not objected to below. A lawyer might, as I have said, withhold an objection in reliance on *O'Rama*, in the hope of obtaining an undeserved reversal—but surely that is a kind of reliance that should not be encouraged.

The views I have just expressed can be no more than tentative. We have not had the benefit of briefing or argument on the issue of whether the mode of proceedings holding of *O'Rama* should be overruled. If the issue were briefed and argued, we would undoubtedly come to understand it more fully than we do now, and might well decide that overruling *O'Rama* is a bad idea. I raise the issue, however, in the hope that my musings will increase the likelihood that the issue will be presented to us in a future case.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, PIGOTT, RIVERA and ABDUS-SALAAM concur; Judge SMITH in a

separate concurring opinion in which Judge ABDUS-SALAAM concurs.

Order modified by vacating defendant's conviction of manslaughter in the first degree, with leave to the People, if they be so advised, to resubmit that charge to a grand jury, and remitting to Supreme Court, Kings County, for resentencing on the conviction of criminal possession of a weapon in the second degree and, as so modified, affirmed, in a memorandum.